UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| RESTEE TESHAUN JACKSON, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos.: | 3:12-CR-92-TAV-HBG-1 |
| | ) | | 3:16-CV-282-TAV |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

**MEMORANDUM OPINION**

Before the Court is Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 21].[1] He bases his request for relief on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague [*Id.*]. The United States filed a response in opposition on June 21, 2016 [Doc. 23]; Petitioner replied in turn on July 6, 2016 [Doc. 24]. For the reasons that follow, Petitioner's § 2255 motion [Doc. 21] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

In 2012, Petitioner pled guilty to, and was subsequently convicted of, possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1), which subjected him to a statutory penalty range of up to ten years' imprisonment under 18 U.S.C. § 924(a)(2) [Presentence Investigation Report (PSR) ¶¶ 2, 52]. Based on two prior convictions—one Illinois conviction for aggravated discharge of a firearm and another conviction for unlawful delivery of a

---
[1] On February 11, 2016, Federal Defender Services of Eastern Tennessee ("FDSET") was appointed for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based on the *Johnson* decision. *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET field the instant § 2255 motion.

controlled substance, the United States Probation Office subjected Petitioner to an enhanced based offense level under Section 2K2.1 of the United States Sentencing Guidelines [*Id.* ¶ 15].[2] After a two-level enhancement based on the number of firearms he possessed, and a three-level reduction for acceptance of responsibility, Petitioner's total offense level was twenty-three [*Id.* ¶¶ 16, 22–24]. Given his criminal history category of III, Petitioner was assigned an advisory Guideline range of 57 to 71 months' imprisonment [*Id.* ¶¶ 33, 53]. The Court sentenced Petitioner to 63 months' imprisonment on April 17, 2013 [Doc. 19]. No direct appeal was taken and Petitioner's conviction became final for purposes of § 2255(f)(1) on May 1, 2013, at expiration of time to file an appeal. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004) (an unappealed judgment of conviction becomes final when the fourteen-day period for filing a direct appeal has elapsed).

More than three years later—on June 2, 2016—Petitioner filed the instant petition challenging his sentence in light of the *Johnson* decision [Doc. 21].

## II. TIMELINESS OF PETITION

Section 2255(f) places a one-year statute of limitations on all petitions for collateral relief under § 2255 running from either: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized

---

[2] The Guidelines set a general base offense level of 14 for violating 18 U.S.C. § 922(g). U.S. Sentencing Manual § 2K2.1(a)(6). For offenders with one prior conviction for either a "crime of violence" or "controlled substance offense," the base offense level increases to 20. U.S. Sentencing Manual § 2K2.1(a)(4). Offenders with two such convictions face a base offense level of 24. U.S. Sentencing Manual § 2K2.1(a)(2).

by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f). Supreme Court precedent makes clear that *Johnson*'s invalidation of the ACCA residual clause amounted to a new rule made retroactively applicable on collateral review. *See Welch v. United States*, 136 S. Ct. 1257, 1265 (U.S. 2016) ("*Johnson* is . . . a substantive decision and so has retroactive effect . . . in cases on collateral review."); *In re Windy Watkins*, 810 F.3d 375, 380–81 (6th Cir. 2015) (finding *Johnson* constitutes a new substantive rule of constitutional law made retroactively applicable on collateral review and thus triggers § 2255(h)(2)'s requirement for certification of a second or successive petition). It is yet to be seen whether the same is true of the "new rule" that results from application of *Johnson*'s reasoning in the Guideline context. *See Pawlak v. United States*, 822 F.3d 902, 911 (6th Cir. 2016) (holding that *Johnson*'s vagueness analysis applies equally to the Guidelines and, as a result, that the parallel residual provision contained in Section 4B1.2 was void for vagueness); *but see In re Embry*, No. 16-5447, 2016 WL 4056056, at *1 (6th Cir. July 29, 2016) (recognizing that "it is not clear whether to treat *Pawlak* as a new rule that the Supreme Court has not yet made retroactive [to cases on collateral review] or as a rule dictated by *Johnson* that the Supreme Court has made retroactive"). The Court finds that it need not resolve the issue here, however, because the *Johnson* decision has no impact on Petitioner's case.

## III. STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the

3

entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

IV.     ANALYSIS

Petitioner articulates as single ground for collateral relief: arguing that his prior Illinois conviction for aggravated discharge of a firearm no longer qualifies as a crime of violence after the *Johnson* decision and that, without that conviction, he no longer qualifies for the enhanced based offense level under Section 2K2.1(a)(2) [Doc. 21].

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The provision defines "serious drug offense" as any "offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The Act goes on to define "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to

4

be unconstitutionally vague by the Supreme Court in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did not call into question the remainder of the ACCA's definition of violent felony—the use-of-physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015). Nor does *Johnson* disrupt the use of prior drug offenses as predicates. *See, e.g.*, *United States v. Smith*, No. 10-CR-20058, 2015 WL 5729114, at *9–13 (E.D. Mich. Sept. 20, 2015) (noting that *Johnson* does not affect a defendant's categorization as an armed career criminal based on his or her prior serious drug offenses).

Section 4B1.1 classifies a defendant as a career offender if (1) he or she was at least eighteen years old at the time the defendant committed the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) he or she has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S. Sentencing Manual § 4B1.1(a). Only Petitioner's satisfaction of the third prong—possession of two qualifying predicate convictions—is disputed [Doc. 21].

"Controlled substance offense" is defined as any offense "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S. Sentencing Manual § 4B1.2(b). "Crime of violence" is defined in an almost identical manner as "violent felony" under the ACCA. See U.S. Sentencing Manual §4B1.2(a) (adopting identical use-of-force and residual clauses as well as a nearly identical enumerated-offense clause).

Petitioner does not contest that his prior conviction for unlawful delivery of a controlled substance remains a predicate controlled substance offense under Section 4B1.1(a)(3). As such,

5

the validity of his sentence depends on whether his prior Illinois conviction for aggravated discharge of a firearm qualifies as a "crime[] of violence" under one of the unaffected provisions of Section 4B1.2(a). *See, e.g.*, *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (denying petition where conviction qualified as a predicate offense independent of the residual clause), *overruled on other grounds by Mathis v. United States*, 136 S. Ct. 2243, 2251 n. 1 (2016). To determine whether a particular offense qualifies as a crime of violence under any of the prongs of the above definition, courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). They do so by employing a "categorical approach," under which it looks "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283. When the conviction involves violation of a "divisible" statute—one which comprises multiple, alternative versions of the crime—courts resort to the "modified categorical approach" under which they "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281.

For purposes of Section 4B1.2(a)(1), "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010). The clause further requires that such force be used "against the person of another." 18 U.S.C. § 924(e)(B)(2)(i). The Court must look to the "minimum conduct criminalized" to determine whether 720 Illinois Compiled Statute Annotated § 5/24-1.2 categorically satisfies these requirements. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013).

6

At the time that Petitioner committed the offense, Illinois defined aggravated discharge of a firearm as follows:

> (a) A person commits aggravated discharge of a firearm when he or she knowingly or intentionally:
>
> (1) Discharges a firearm at or into a building he or she knows or reasonably should know to be occupied and the firearm is discharged from a place or position outside that building; [or]
>
> (2) Discharges a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person[.]

720 Ill. Comp. Stat. Ann. § 5/24-1.2 (2002). The provision went on to list five other methods of committing the offense before designating violations of subsections (a)(1) and (a)(2) Class 1 felonies and violations of (a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) Class X felonies. 720 Ill. Comp. Stat. Ann. 5/24-1.2(b) (2002). The Illinois Court of Appeals has said that the crime is composed of two elements: (1) knowing and intentional discharge of a firearm; (2) in the direction of another person. *People v. Leach*, 952 N.E.2d 647, 654 (Ill. App. 2011). While it is "essential" that the defendant be aware "of the presence of an individual in the direction . . . he [or she] fires a weapon," *People v. Daheya*, 1 N.E.3d 920, 932 (Ill App. 2013), it is not required that the bullets strike the building or vehicle, *People v. Ellis*, 929 N.E. 2d 1245, 1249 (Ill App. 2010), or the offender intend to inflict death or injury to the victim, *People v. Fornear*, 669 N.E.2d 939, 944 (Ill. App. 1996), *reversed on other grounds by People v. Fornear*, 680 N.E.2d 1383 (Ill. 1997).

The Court notes that 720 Illinois Compiled Statute Annotated § 5/24-1.2 lists seven separate criminal offenses, some of which qualify as different classes of felony. As such, the provision is divisible and subject to examination under the modified categorical approach. *See*

7

*Mathis*, 135 S. Ct. at 2256 (explaining that where "statutory alternatives carry different punishments, . . . they must be elements" (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000))). Further, reference to Petitioner's state court judgment demonstrates that he was convicted of violating subdivision (a)(2)—the variant involving discharge of a firearm in the direction of another person or in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person [Doc. 23-1 (state judgment)]. The Court limits its analysis to that provision.

Petitioner argues that Petitioner's violation of 720 Illinois Compiled Statute Annotated § 5/24-1.2(a)(2) cannot qualify as a violent felony under the use-of-physical-force clause because it (1) does not require the targeting of any particular person and (2) is capable of commission without "intent to physically harm another person" [Doc. 21 p. 4; Doc. 24 pp. 6–9]. In other words, Petitioner admits that Illinois aggravated discharge of a firearm invariably requires the use of force, but argues that at least some methods of committing the offense involve the use of that force "against property" as opposed to "the person of another" [*Id.*]. As support, Petitioner cites a Fourth Circuit decision—*United States v. Parral-Dominguez*, 794 F.3d 440 (4th Cir. 2015), which held that North Carolina discharge of a firearm into occupied property does not qualify under the ACCA's use-of-physical-force clause [*Id.*]. It is important to note, however, that this Court is not constrained by that decision and that independent review of applicable federal and state law lead it to conclude that Illinois aggravated discharge of a firearm does in fact involve the use of force against the person of another and thus qualifies as crime of violence under Section 4B1.2(a)(1).

With regard to Petitioner's first argument, he has failed to cite and this court is unaware of any Sixth Circuit authority which holds that an offender uses force "against the person of

8

another" only when he or she exerts that force with a specific target in mind. It is sufficient for purposes of Section 4B1.2(a)(1) that the offender intentionally sets into motion, attempts to set into motion, or threatens to set into motion "a series of events that [he] knows will result in the application of a force capable of causing physical pain or injury to another," *United States v. Evans*, 699 F.3d 858, 864 (6th Cir. 2012), where another person exists for that force to be exerted against and under circumstances that the user knows or has reason to know could result in contact with that other person. This definition finds support in several cases—including at least one Seventh Circuit decision analyzing the exact provision at issue in the instant case—findng that statutes criminalizing the discharge of a firearm into an occupied vehicle categorically involve the use of violent force against the occupant or occupants of that vehicle. *See, e.g.*, *United States v. Wilkerson*, 492 F. App'x 447, 449 (4th Cir. 2012) (finding that North Carolina conviction for discharge of a firearm involved the use of force against the person of another), *and United States v. Curtis*, 645 F.3d 937, 941–942 (7th Cir. 2011) (finding that Illinois conviction for knowing and intentional discharge of firearm into a vehicle involved the use of force against the person of another). While at least three decisions—*United States v. Ruvalcaba*, 627 F.3d 218 (6th Cir. 2010), *United States v. Jaimes-Jaimes*, 406 F.3d 845 (7th Cir. 2005), and *United States v. Alfaro*, 408 F.3d 204 (5th Cir. 2005)—have refused to reach the same conclusion for discharge into buildings, all three of the relevant provisions applied to buildings that were empty at the time of discharge. *See Ruvalcaba*, 627 F.3d at 222 (explaining that Ohio discharge of a firearm into an occupied dwelling did "not require the use of physical force against another" because "occupied dwelling" included structures that were empty at the time of discharge); *Jaimes-Jaimes*, 406 F.3d at 849–50 (finding that Wisconsin discharge of a firearm into a building involved the use of force against the building, not other persons); *Alfaro*, 408

F.3d at 209 (finding that Virginia discharge of a firearm into a building does not involve the use of force against another person because the offense could be committed by shooting into a building that was not occupied).

Unlike the provisions in *Ruvalcaba*, *Jaimes-Jaimes*, and *Alfaro*, 720 Illinois Compiled Statute Annotated § 5/24-1.2(a)(2) requires that the target be either a person or vehicle which the shooter knows or has reason to know is occupied at the time of discharge. This combination of elements—occupancy in fact and knowledge or reason to know of the same—makes it impossible to commit the crime without the use, attempted to use, or threatened use of violent force against another. *Accord United States v. Womack*, 732 F.3d 745, 748–49 (7th Cir. 2013) (finding Illinois discharge of a firearm into an occupied building involved force against occupant where the offender knew about the occupancy); *Curtis*, 645 F.3d at 941–942 (finding same with regard to Illinois conviction for knowing and intentional discharge of firearm into a vehicle).

With regard to Petitioner's second argument, Illinois aggravated discharge of a firearm requires "knowingly or intentionally discharg[ing] a firearm in the direction of another person or in the direction of a vehicle [the shooter] knows to be occupied." *People v. Williams*, 688 N.E.2d 320, 323 (Ill App. 1997) (internal citation omitted). Because the crime demands an intentional use of force—discharge of the firearm, it is irrelevant that that the offender need only be reckless as to whether or not the bullet will ultimately enter the vehicle and occupancy of the same. *Accord People v. James*, 617 N.E.2d 115, 121 (Ill App. 1993) (describing offense as "intentionally firing a weapon, knowing that the weapon was being fired in the direction of someone).

Because at least two prior convictions remain predicate offenses under provisions left unaffected by the *Johnson* decision, Petitioner is not entitled to the requested collateral relief.

10

## V. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion [Doc. 21] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE